Pio S. Kim (SBN 156679)
pio.kim@limnexus.com
**LimNexus LLP**
707 Wilshire Boulevard, 46th Floor
Los Angeles, California 90017
Phone: (213) 955-9500 | Fax: (213) 955-9511

Attorney for Plaintiff John Doe

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (Western Division)

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>                    v.<br><br>THE UNITED STATES OF AMERICA,<br><br>                    Defendant. | Case No.<br><br>**COMPLAINT FOR EQUITABLE RELIEF; JURY TRIAL DEMAND** |

Plaintiff John Doe, for its Complaint against Defendant United States of America ("the government"), complains and alleges as follows:

### JURISDICTION AND VENUE

1.     This court has subject matter jurisdiction over this action under 28 U.S.C. §1331.

2.     Venue is situated with this Court because a substantial portion of the acts complained of herein occurred in the Los Angeles County, the State of California, in this judicial district.

///

///

**PARTIES**

3.     Plaintiff John Doe ("Plaintiff") is an adult male residing in the Republic of Korea ("Korea").  Plaintiff, a citizen of Korea, seeks to proceed anonymously, due to the highly sensitive and personal nature of the details about Plaintiff in this action and the severe harm which will be inflicted on Plaintiff and his family should the details become public.

4.     Plaintiff is married with children, and owns and manages large business operations in Korea, the United States and Canada.

5.     The defendant in this action is the United States of America (the "government").

**GENERAL ALLEGATIONS**

**I.     INTRODUCTION**

6.     Jane Doe ("Doe")[1] manipulated Plaintiff to think that she was Plaintiff's girlfriend.   She then talked Plaintiff into giving a large sum of money, approximately $26,000.  She also falsely reported to the government that Plaintiff trafficked her from Korea into the U.S. for sex so that she could obtain a visa to stay in the U.S.

7.     The government investigated Plaintiff for human trafficking based on the false accusation by Doe even after  the agent (the "Agent") investigating Plaintiff  learned the falsity of the accusation.

8.     Purportedly in love with Doe, the Agent falsely declared that Doe was a victim of human trafficking and obtained a vise for Doe.

9.     The Agent also extorted Plaintiff, using the investigation as the leverage against Plaintiff.

10.     The government enlisted Plaintiff's assistance in investigating and prosecution the Agent for the extortion, with the promise that it would help Plaintiff

_____

[1] Plaintiff refers to Jane Doe by the pseudonym to protect the privacy of her, Plaintiff and his family.

2
COMPLAINT FOR EQUITABLE RELIEF

with the travel restrictions placed on Plaintiff by the U.S. immigration authority because of the human trafficking investigation.

11.     Plaintiff provided the assistance as requested by the government, and the Agent was successfully prosecuted.

12.     In direct contravention of its promise, the government is now absurdly refusing to allow Plaintiff to travel to the United States (the "U.S.") on the ground that he was accused of human trafficking.

13.     The government's conduct toward Plaintiff is particularly troublesome because it is well aware that Plaintiff has and will continue to incur severe financial damages because he cannot operate his business in the U.S.

14.     Plaintiff is mindfully that it is the U.S. embassy in Korea who denied and continues to deny his visa application, not the agencies who fraudulently investigated Plaintiff, enlisted the assistance of Plaintiff for the prosecution of the Agent, and promised to help with the travel restriction.

15.     Plaintiff is also mindful that the embassy is not aware of the details of the investigation and the subsequent events, and is acting solely on the bare minimal and therefore completely misleading records of the same available to it.

16.     However, the government cannot abrogate its obligation to act within the confines of the law – the obligation to not act capriciously by relying on an accusation it knows to be false -  and must not compound its wrongful conduct by continuing to victimize Plaintiff.

## II.   BASIC FACTS

17.     Plaintiff became infatuated with Doe when Plaintiff met her at an upscale drinking establishment in Seoul Korea.   Sometime after their initial meeting, Plaintiff believed himself to be in a romantic relationship with Doe and traveled with her to Hawaii from Korean for a vacation, with Plaintiff defraying her travel expenses and providing her with some shopping money.

18.     Plaintiff was not aware, and Doe did not disclose, that she was already in a relationship with a famous celebrity sports figure in Korea.

COMPLAINT FOR EQUITABLE RELIEF

19.     Shortly after the Hawaii vacation, capitalizing on Plaintiff's infatuation with her, Doe asked Plaintiff to pay off her debt in the approximate amount of $26,000, and show her the rest of the U.S.

20.     Plaintiff gave Doe the money she asked for, and she traveled to the Los Angeles International Airport (the "LAX") for the avowed purpose of experiencing the U.S. and perhaps attending school.   Besotted with Doe, Plaintiff did not even think to verify the existence of the debt or whether or not she  paid off the purported debt.

21.     Upon her arrival at the LAX, Doe falsely claimed to the United Stated Immigration and Customs Enforcement ("ICE") that Plaintiff purchased her and trafficked her into the U.S. for sex.

22.     Based on her false claim, ICE began a human trafficking investigation into Plaintiff, but the Agent in charge of the investigation discovered that Doe lied to the government about being trafficked.

23.     However, the Agent fell in love with Doe, and falsely declared, under penalty of perjury, to a court that Doe was a human trafficking victim.  The Agent wanted Doe to get a human trafficking victim visa so that she could stay in the U.S. with him.

24.     The Agent also extorted Plaintiff.  The Agent purported that he wanted to financially provide for Doe and, pretending that the investigation was still pending, requested that Plaintiff pay him money if Plaintiff wanted his name cleared.

25.     When he extorted Plaintiff, the Agent knew that Plaintiff was innocent and that Plaintiff desperately needed to be able to visit the U.S. to manage his business operation in the U.S.  As an official target of the human trafficking investigation, which was prolonged for illegal purposes by the Agent, Plaintiff was refused entry by the government.

///

COMPLAINT FOR EQUITABLE RELIEF

26.     As the direct result of the Agent's extortion, Plaintiff was forced to pay the Agent an amount between $9,000 and $11,000.

27.     When the government began investigating the Agent for his illegal conduct, Plaintiff and his family provided material assistance to the government by, among other things, recording incriminating conversations with the Agent.

28.     The assistance by Plaintiff and his family led to the felony conviction of the Agent, and during the course of his prosecution, the Agent admitted that he knew Doe was not a victim of human trafficking.  He also admitted that he pretended that the investigation against Plaintiff was still open and extorted Plaintiff because he fell in love with Doe and wanted to financially provide for her.

29.     In assisting the government, Plaintiff was led to believe that the government would correct its official records to show that Plaintiff was in no way involved in human trafficking or prostitution, and would desist from denying him entry to the U.S.

30.     However, to date, the government has failed to make such corrections and continues to deny Plaintiff entry into the U.S.

31.     Consequently, Plaintiff was forced to abandon his plan to expand the operation in the U.S. and was forced to divert the investment funds to Canada where he now has another manufacturing operation.  The diversion of the funds imposed severe financial damages to Plaintiff's business, and Plaintiff continues to suffer financial losses from lacking an expanded manufacturing operation in the U.S. where most of his customers are located.

32.     The Agent and the government's conduct in this matter, including the institution and continuation of the investigation of Plaintiff based on the patently false report by Doe, the extortion of Plaintiff, the rejections of Plaintiff's visa applications, and the exclusion of Plaintiff from the U.S., are now threatening Plaintiff's ability to conduct business in Canada.

///

33.     On information and belief, the U.S. government and Canadian government will be soon exchanging their criminal investigation records for the travelers to each country, and as soon as the exchange takes place, Plaintiff will be also banned from Canada, inflicting devastating injury to his business operation in Canada and the U.S.

34.     Doe defrauded Plaintiff of $26,000, falsely reported Plaintiff as a human trafficker, led yet another man, the Agent, to be infatuated with her, and caused the Agent to file a false declaration with a court  so that she could stay in the U.S.

35.     The government benefitted from the assistance from Plaintiff and his family in prosecuting the Agent.

36.     On the other hand, Plaintiff stands accused of human trafficking, without being charged or cleared of the false allegation; excluded from the U.S.; and threatened with exclusion from Canada, suffering severe emotional and financial injuries.

37.     In this action, Plaintiff seeks expungement of all records relating to the investigation of Plaintiff and a judicial declaration that Plaintiff did not commit any human trafficking or prostitution, and that the investigation of Plaintiff was initiated based on fraudulent information and was later used for the Agent's illegal extortion purposes.

38.     This Court has the inherent power to remedy the egregious injuries inflicted on Plaintiff by Doe and the Agent (and by extension, the government).

III.   **DOE WORKED AT A "TEN PRO" ESTABLISHMENT IN THE WEALTHIEST NEIGBORHOOD IN SEOUL, KOREA.**

39.     In or about October 2011, Plaintiff met Doe at a "Ten Pro" establishment (the "Establishment") located in the Gang Nam district of Seoul, Korea, one of the wealthiest areas of Seoul.

///

COMPLAINT FOR EQUITABLE RELIEF

40.     At that time, Doe was working as a "doumi", and her job duty was to help the clients of the Establishment relax and enjoy themselves by acting as their conversation and drinking partner.  The term "doumi" literally means helper.

41.     The term "Ten Pro" means top ten percent, and Ten Pro establishments are reputed to be top ten percent in various aspects of the business, including their ambience, alcoholic beverages, foods and doumis.

42.     As such, Ten Pro establishments cater to wealthy clients and strictly maintain an aura of class and sophistication.  Ten Pro establishments do not provide sexual service to their clients.[2]

## IV.     AS A DOUMI AT A TEN PRO ESTABLISHMENT, DOE HAD LARGE INCOME

43.     Top Ten establishments compete fiercely for talented doumis, going as far as to offer interest free loans for signing with them.[3]

44.     Top Ten establishments also compensate their employs extremely well. A typical Ten Pro doumi makes about $10,000 per month, and some earn more than $35,000 per month[456].

45.     Ten Pro doumis do not engage in, or offer to engage in, physical relationship with the clients, for monetary compensation, and they certainly are not sold or purchased.

46.     Based on the extensive review of the chatrooms[7] or website for Ten Pro doumis, human trafficking or physical violence is not one of their concerns.

---

[2] http://www.iminju.net/news/articleView.html?idxno=1109

[3] http://www.iminju.net/news/articleView.html?idxno=1109

[4] http://www.ilyoseoul.co.kr/news/articleView.html?idxno=136247

[5] http://www.iminju.net/news/articleView.html?idxno=1109

[6] http://www.ilyosisa.co.kr/news/articleView.html?idxno=21249

[7] https://cafe.naver.com/asundl

COMPLAINT FOR EQUITABLE RELIEF

47.     The doumis are concerned with maintaining their expensive life style. In order to keep their valuable status, they spend inordinate amounts of money and time upkeeping and upgrading their appearance and the trappings of the glamorous life.  For instance, if they don't already own a foreign luxury vehicle, the doumis use stand-by limousine service.[8]

## V.     DOE INDUCED PLAINTIFF INTO BELIEVING THAT THEY WERE IN A ROMANTIC RELATIONSHIP AND DEFRAUDED $26,000 FROM PLAINTIFF

48.     Some doumis actively seek and cultivate wealthy boyfriends or gentleman friends who can free them from having to work to maintain the expensive life style.

49.     The doumi-boyfriend/gentleman friend relationship (the "Relationship") is not commercial in nature, as in the case of prostitution.  While the boyfriend or gentleman friend provides the doumi with expensive gifts and financial assistance, he is motivated largely, if not exclusively, by emotional ties to the doumi and the psychological gratification from the relationship.

50.     Between October 2011 and February 2012, Plaintiff visited Doe at the Establishment several times.  Further, during the same time period, Plaintiff and Doe also went out on lunch and dinner dates on several other occasions.

51.     Plaintiff found Doe very attractive from the first meeting and soon developed strong feelings for her, which Plaintiff believed Doe encouraged and reciprocated.

52.     In February 2012, Plaintiff and Doe  traveled to Hawaii from Seoul, Korea.

53.     Plaintiff provided Doe with approximately $3,000 for shopping in Hawaii.

[8] http://www.iminju.net/news/articleView.html?idxno=1109

{00139997}                                   8
COMPLAINT FOR EQUITABLE RELIEF

54.    Plaintiff believed that the Hawaii vacation cemented their relationship, and Doe also appeared very happy.   At the conclusion of the vacation, Doe traveled back to Korea, and Plaintiff traveled to the U.S. where he had a sizable manufacturing and wholesale operation.

55.    About one or two weeks after the vacation, Doe expressed to Plaintiff that she would like to see the rest of the U.S., intimating that she might take some classes in the U.S., and that she really wanted to see him.

56.    She also asked Plaintiff to help her repay a debt in the approximate amount of $26,000.

57.    Plaintiff did not find anything amiss with Doe's request, thinking that it was only natural for a girlfriend to ask her boyfriend for help.  Accordingly, Plaintiff did not ask her about the details of the loan or try to verify the existence or the amount of the loan.  Instead, Plaintiff simply gave Doe the money.

58.    To this date, Plaintiff does not know if Doe owed the debt or if she used the money from Plaintiff to pay off the debt.

59.    More disturbingly, during the entire duration of their relationship, Doe deliberately hid from Plaintiff that she was already in a romantic relationship with a Korean sports celebrity.

## VI.   DOE KNEW SHE COULD OBTAIN A VISA TO STAY IN THE U.S. BY REPORTING THAT SHE WAS A VICTIM OF HUMAN TRAFFICKING[2]

60.    Under its Immigration Act Article 25-2(1) and 25-3(1), Korea allows the foreign victims of sexual crimes, including human trafficking, to extend the period of stay in Korea until the proceeding to remedy the infringement of the victim's right are completed.  Koreans are generally aware that foreigners can

---

[2] https://www.dhs.gov/sites/default/files/publications/PM_15-4344%20U%20and%20T%20Visa%20Law%20Enforcement%20Resource%20Guide%2011.pdf

COMPLAINT FOR EQUITABLE RELIEF

lengthen their stay in Korea if they are a victim of human trafficking and they report the crime.

61.     Similarly, the U.S. grants U or T visas to the victims of human trafficking, which can lead to U.S. permanent residency and citizenship.

62.     The U visa is reserved for victims of certain crimes, including human trafficking, who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity[10].

63.     The U visa is valid for four years, with extension eligibility if another immigration adjustment or status is not granted during that time. The approved applicant is eligible to apply for a lawful permanent resident card (green card) after three years – a pathway to citizenship.

64.     The T visa is a temporary immigration benefit that enables certain victims of a severe form of human trafficking to remain in the United States for up to 4 years if they have assisted law enforcement in an investigation or prosecution of human trafficking.  T visa nonimmigrants who qualify may also be able to adjust their status and become lawful permanent residents.[11]

65.     Koreans are also generally aware of the U visa and T visa as the visas are widely discussed in Korean legal counseling websites,[12] newspaper articles[13] [14]

_____

[10]https://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-activity-u-nonimmigrant-status

 https://www.domesticpreparedness.com/preparedness/u-visas-a-hidden-homeland-security-vulnerability/

[11] https://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-human-trafficking-t-nonimmigrant-status

[12] http://apil.or.kr/?p=3619&ckattempt=3

[13] http://www.koreatimes.com/article/945947

[14]http://www.koreadaily.com/news/read.asp?page=1&branch=&source=&category=emigration&art_id=6472175

1   [15] and NAVER,[16] [17] [18] [19] [20] the top ranked web search portal in Korea commonly

2   referred to as 'the Google of South Korea'.

3       66.    For instance, one of the NAVER Blogs[21] introduces U visa, as "The

4   short-cut visa to obtain a lawful permanent resident card (green card)".

5   **VII.  DOE LIED THAT SHE WAS PURCHASED BY PLAINTIFF AND**

6          **HUMAN-TRAFFICKED TO LOS ANGELES**

7       67.    On March 9, 2012, Doe arrived at the LA International Airport

8   ("LAX"), with the airline tickets she purchased with her own money. Plaintiff was

9   waiting for her at the airport.

10       68.    For reasons unknown to Plaintiff, Customs Border Protection ("CBP")

11   agents, including an agent who purportedly spoke Korean, interviewed Doe.  She is

12   purported to have stated that  Plaintiff:

13           (a)    purchased her for $26,000,

14           (b)    brought her to Hawaii on March 1, 2012,

15           (c)    told her to stand in a different line at the Hawaii airport

16               immigration inspection area,

17           (d)    told her to say that she was his girlfriend if asked, and

18

---

19   [15] http://www.koreatimes.com/article/20160418/982583

20   [16] As of September 2017, the search engine handled 74.7% of all web searches in South Korea and had 42 million enrolled users. More than 25 million Koreans have Naver as the start page on their

21   default browser and the mobile application has 28 million daily visitors.

22   [17] https://blog.naver.com/usalawyer/221367418275 9-29-2018

23   [18] https://blog.naver.com/skrmsp24/220825898319 10-2-2016

  [19] https://blog.naver.com/usalawyer/221369221119

24   [20]Https://m.blog.naver.com/PostView.nhn?blogId=pax2102&logNo=220504403646&proxyRefere

25   r=https%3A%2F%2Fwww.google.com%2F

26   [21]
https://m.blog.naver.com/PostView.nhn?blogId=koreatimesusa&logNo=220694387765&targetKe

27   yword=u%EB%B9%84%EC%9E%90&targetRecommendationCode=1&keywordSearchType=TE

28   XT

(e)      paid her $896 each time they had sex.

69.      On March 9, 2012,  the Korean-speaking agent also interviewed Plaintiff and Plaintiff informed the agent that Doe was his girlfriend.

70.      After the interview of Plaintiff, the Korean-speaking agent alleged that Plaintiff admitted to giving Doe $1,000 for sex in Hawaii.

71.      Plaintiff denies telling the Korean-speaking agent or anyone that he gave Doe money for sex.  Plaintiff only confirmed to the agent that he gave her about $30,000, referring to the money he gave Doe  to repay the alleged debt and $3,000 he gave her for shopping.

72.      After the interview, Plaintiff left the LAX without Doe as instructed by the agent.

73.      Plaintiff's subsequent efforts to see Doe were not successful, and Plaintiff returned to Korea without ever being able to see her or speak with her.

74.      On May 22, 2012, Plaintiff attempted to enter the United States but he was apparently arrested, fingerprinted, and sent back to Korea at the LAX.

75.      Despite his retention of legal representation, Plaintiff's multiple visa applications have been rejected.

76.      Plaintiff has not been charged with any crime.

77.      On information and belief, the government granted Doe a U or T visa in connection with the investigation of Plaintiff for human trafficking.

**VIII.  THE AGENT INVESTIGATING PLAINTIFF UNCOVERED THAT DOE FRAMED PLAINTIFF BUT DECIDED TO EXTORT PLAINTIFF, INSTEAD OF CLEARING HIS NAME**

78.      In his sentencing position, the Agent admitted that he and Doe began a romantic relationship and that he learned that Doe was not trafficked.

79.      Even apart from the Agent's realization from his own interaction with Doe, it is impossible even to suspect that she was trafficked.  Doe was a Ten Pro doumi with a high income and a girlfriend of a Korean sports celebrity.  Further,

COMPLAINT FOR EQUITABLE RELIEF

Plaintiff gave Doe $26,000.  If she was being sold and purchased, Plaintiff would have paid her trafficker, not her.

80.     On information and belief, Plaintiff alleges that Doe manipulated the Agent into believing that they were in a romantic relationship, as she had done with Plaintiff.  Shin needed and wanted the Agent's help in securing a visa to stay in the U.S.

81.     In his sentencing position, the Agent admitted that even though he knew Plaintiff was innocent and recommended that the investigation be closed, he pretended that the investigation was still open because he wanted to financially help Doe.  He admitted that he called Plaintiff's attorney and asked for money for clearing Plaintiff of the false accusation, which money he was presumably going to use for Doe.

82.     When informed of the Agent Lee's demand for money, Plaintiff believed that the agent instituted the investigation for extortion since there was no reason to believe that Doe was trafficked.

83.     Plaintiff also believed that even if the Agent did not institute the investigation for extortion, the Agent was nevertheless extorting him with a threat that the agent will continue the investigation or maintain the official records showing Plaintiff as a human trafficking suspect so that Plaintiff would not be able to enter the U.S.

84.     Having no realistic means to fight the Agent's extortion, Plaintiff was forced to pay an amount between $9,000 and $11,000.

85.     On information and belief, Plaintiff alleges that before or at the time of his extortion of Plaintiff, the Agent was under investigation by the government.

86.     In its investigation of the Agent, the government enlisted the assistance of Plaintiff and his family.  In particular, the U.S. government brought Plaintiff from Korea into the U.S. to record an incriminating conversation with the Agent.

///

COMPLAINT FOR EQUITABLE RELIEF

87.     In assisting the government, Plaintiff was led to believe that the government knew of his innocence, will clear his name and will allow him to enter the U.S.

88.     However, the government promptly sent Plaintiff back to Korea without clearing him of the false allegations or enabling him to travel to the U.S., and is continuing to deny him entry to the U.S.

## IX.     PLAINTIFF SUFFERED SEVERE FINANCIAL DAMAGES AND IS THREATENED WITH EVEN GREATER DAMATGES

89.     As a direct result of said conduct by Does, the Agent Lee and the government, Plaintiff was excluded from the U.S. and unable to manage his business operation in the U.S.

90.     As a direct result of said conduct by Doe, the Agent and the government, Plaintiff was forced to establish a second manufacturing operation in Canada, instead of the U.S., and suffered financial damages in millions of dollars.

91.     As a direct result of said conduct by Doe, the Agent and the government, Plaintiff is threatened with even greater financial damages in that Canada will also exclude Plaintiff once Canada and the U.S. begin sharing their criminal investigation records.

## CLAIM FOR EQUITABLE RELIEF

92.     For all of the foregoing reason, Plaintiff respectfully requests that this Court order or declare that:

a.     All records relating to the investigation or arrest of Plaintiff be expunged or sealed;

b.     There is no evidence of human trafficking or prostitution against Plaintiff;

c.     The government acted capriciously and improperly when it refused to grant entry to Plaintiff on the ground that he was implicated in human trafficking or prostitution; and

1

          d.      For other such relief as the Court may deem proper.

2

3   DATED: January 8, 2020                 **LIMNEXUS, LLP**

4

5                                  BY:   */S/ PIO S. KIM*

6                                        Pio S. Kim

7                                        Attorneys for Plaintiff John Doe

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby requests a jury trial on any and all claims so triable.

DATED: January 8, 2020                     **LimNexus, LLP**

By:   */s/ Pio S. Kim*
                                        Pio S. Kim
                                        Attorneys for Plaintiff John Doe